UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

| | |
|---|---|
| VIJAY ROY, | |
| Plaintiff, | Civil Action No. 07-5082 (PGS) |
| v. | **REPORT AND RECOMMENDATION** |
| KAMLESH J. BRAHMBHATT, SONAL BRAHMBHATT, DIAMOND HOSPITALITY CORP. and JOHN DOES 1-3 | |
| Defendants/Third-Party Plaintiffs | |
| v. | |
| PETER KUMAR a/k/a PAVAN NANJUNDIAH and SHASHI REKHA | |
| Third-Party Defendants | |

**SALAS, UNITED STATES MAGISTRATE JUDGE:**

Before this Court is Third-Party Defendants Peter Kumar's and Shashi Rekhas's motion to dismiss the Third-Party Complaint filed by Defendants Sonal Brahmbhatt ("SB"), Kamlesh Brahmbhatt ("KB") and Diamond Hospitality Corp. ("DHC") (collectively "Third-Party Plaintiffs") for lack of personal jurisdiction [Dkt. 17] pursuant to Fed. R. Civ. P. 12(b)(2). The Hon. Peter G. Sheridan has referred the motion to this Court for a Report and Recommendation. L. Civ. R. 72.1(a)(2).

1

This case involves a question of first impression under New Jersey law: does the so-called "conspiracy theory" of personal jurisdiction violate due process? This Court holds that, insofar as the facts of this case are concerned, it does, and respectfully recommends to Judge Sheridan that the Third-Party Defendants' motion be granted.

## I. BACKGROUND

In April 1998, Plaintiff Vijay N. Roy ("Roy"), a New Jersey resident, Bimal Brahmbhatt (non-party) and KB, a Virginia resident, formed DHC to purchase and run a Holiday Inn hotel. DHC is a Virginia corporation with its principal place of business in Virginia. The Holiday Inn purchased by DHC is located in Suffolk, Virginia. In order to finance the purchase of the hotel, DHC took out a loan that was personally guaranteed by each owner. Prior to the closing on the hotel, Roy recommended that Kumar manage the hotel because of his experience in hotel management. The owners agreed. In addition, Kumar purchased shares of DHC from KB which was paid via a note given by Rekha to KB.[1]

In September 2004, DHC refinanced its existing loan in order to purchase the shares of Roy and Kumar's stock. Bimal Brahmbhatt also sold his stock to DHC. As a result of the sales, KB became sole owner of all outstanding DHC stock. On September 20, 2007, DHC sold the hotel. The net proceeds of the sale were placed in an escrow account as these funds are subject to the current matter.

On October 23, 2007, Roy filed a nine count complaint against the Defendants alleging: breach of fiduciary duty; fraud; tortious interference with contractual rights and gross negligence; conspiracy and tortious interference with prospective economic advantage; state RICO; federal

---
[1] The note given to KB was personally guaranteed by Rekha as Rekha and Kumar are husband and wife.

RICO; common law fraud; accounting malpractice; and legal malpractice.  By way of answer on January 14, 2008, the Defendants filed the Third-Party Complaint against Kumar and Rekha.

The Third-Party Complaint alleges that Kumar took advantage of his position in DHC to: issue stock without proper authorization; pay his salary to Rekha to avoid his creditors; set excessive salaries for himself and Rekha; and obtain corporate credit cards without proper authorization that were used to pay for personal items and expenses of himself and Rekha.  The Third-Party Complaint also alleges that Roy, Kumar and Rekha engaged in a civil conspiracy to defraud KB and DHC.  The Third-Party Plaintiffs allege the following acts that were committed in furtherance of the conspiracy:

> Kumar consistently refused to let KB see or have access to DHC's books and records. When KB called a shareholders meeting to discuss Kumar's improper use of corporate funds and assets, Roy thwarted the meeting by claiming that he did not have proper notice of the meeting and refused to be bound by any decisions if the meeting was held.  Roy and Kumar then locked KB out of the hotel.
>
> In connection with the closing of the refinancing loan, Kumar and Roy prepared releases and other documents, and acted as if they had sole authority to speak and act on behalf of DHC.
>
> After Roy, Kumar and KB agreed that the monies paid from the closing proceeds were to be in return of Kumar and KB's stock and not in payment of any debt, Roy and Kumar prepared documents purposefully ambiguous so as to permit KB to claim that he had not in fact sold his stock back to DHC, but rather as a payment for a loan.

Consistent with Roy, Kumar and Rekha's plan, Roy is now claiming that the closing proceeds were not in return of his stock but in repayment of loan

The Third-Party Plaintiffs allege that all of these acts demonstrate that Roy, Kumar and Rekha engaged in a civil conspiracy to defraud the Defendants. Also, KB claims that Rekha has failed to pay on the promissory note given in return of KB's stock.

Kumar and Rekha bring the present motion to dismiss the Defendants' Third-Party Complaint for lack of personal jurisdiction. Kumar and Rekha argue that New Jersey does not have either general or specific jurisdiction over them. In support, they argue that they are Virginia residents that do not own property or conduct business in New Jersey. Therefore, they do not have the necessary continuous and systematic contacts with New Jersey to support general jurisdiction. Secondly, they argue that the Court does not have specific jurisdiction over them because they did not purposefully direct any activities to New Jersey. They argue that all of the alleged activities in the Third-Party Complaint were directed towards the Third-Party Plaintiffs in Virginia. The improper management of the hotel, excessive salaries and improper personal expenses were all conducted in Virginia and directed towards Virginia residents.

Based on these allegations, the Third-Party Plaintiffs have not provided any evidentiary support to demonstrate that Kumar and Rekha purposefully availed themselves of the privilege of conducting activities in New Jersey. Additionally, the causes of actions in the Third-Party Complaint do not arise or relate to any contact that Kumar or Rekha may have with New Jersey.

The Third-Party Plaintiffs do not challenge Kumar and Rekha's assertion that under traditional principles of personal jurisdiction the Court does not have either general or specific jurisdiction. Rather, the Third-Party Plaintiffs allege that because Kumar and Rekha were

4

engaged in a civil conspiracy with Roy and that Roy orchestrated and/or committed acts in furtherance of the conspiracy in New Jersey, the jurisdictional contacts of Roy can be imputed to Kumar and Rekha to establish personal jurisdiction. Third-Party Plaintiffs also argue that two acts in furtherance of the conspiracy were committed in New Jersey. First, they argue that Roy was given a corporate car for his personal use in New Jersey and second, Roy used a New Jersey attorney to thwart of holding of a shareholder meeting. Third-Party Plaintiffs argue that these contacts demonstrate that the "conspiracy" purposefully directed its activities to New Jersey via Roy and that, therefore, the Court has both general and specific personal jurisdiction over Kumar and Rekha.

## II.   DISCUSSION

### A.   *The Traditional Theories of Specific and Personal Jurisdiction*

#### 1.   **Framework**

When evaluating a motion to dismiss pursuant to Rule 12(b)(2), a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2004) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)). "Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, fasts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA*, 954 F.2d at 146.

Under the Federal Rules of Civil Procedure 4(e), personal jurisdiction over non-resident defendants may only be exercised to the extent that is authorized by the laws of the state in which the federal court sits. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long arm statue permits service on a non-resident defendant to the extent

that is permitted by the Constitution.  N.J. Ct. R. 4:4-4; *Carteret Sav. Bank, FA*, 954 F.2d at 145. Accordingly, a court may exercise personal jurisdiction over a nonresident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor*, 496 F.3d at 316 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  In determining whether sufficient minimum contacts exist, the court looks at "the relationship among the defendant, the forum, and the litigation."  *Pinker*, 292 F.3d at 368.

Personal jurisdiction can be established by way of specific jurisdiction or general jurisdiction.  *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-415 & n. 9 (1984).  In *O'Connor*, the Third Circuit set forth the following framework to determine if specific jurisdiction is present: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice.  *O'Connor*, 496 F.3d at 317.  To establish specific jurisdiction, plaintiffs need not show that the defendant(s) be physically located in the state while committing the alleged act(s).  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  Nor is jurisdiction defeated merely because the bulk of harm occurred outside the forum.  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984).  Instead, a single act may satisfy minimum contacts if it creates a substantial connection with the forum.  *Burger King Corp.*, 471 U.S. at 476 n.18.

On the other hand, a court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state.  *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408, at 415 n. 9.  The plaintiff must show more than mere minimum

6

contacts with the forum state. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). Moreover, the facts required to establish general jurisdiction must be extensive and persuasive. *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982).

Regardless of whether a court exercises specific or general jurisdiction, it must be established that the defendant "has purposefully directed its activities toward the residents of the forum state, ... or otherwise 'purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *IMO Idus., Inc. V. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

When a defendant's contacts are not otherwise sufficient to establish personal jurisdiction under the above theories, and the plaintiff has alleged that the defendant has committed an intentional tort, the court must also analyze the contacts under the "effects test" as established by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). *Keyser v. Keyser*, No. 07-3257, 2007 WL 4105366, at *3 (E.D. Pa. Nov. 19, 2007). Under the effects test, the plaintiff must show that:

> (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort: and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Industries, Inc.*, 155 F.3d at 265-66. This test allows the court to assert jurisdiction over the defendant even though the contacts with the forum alone are too small to comport with the requirements of due process. *Marten v. Godwin*, 499 F.3d 290, 297 (3d Cir. 2007). The crucial

aspect of the effects test is that a plaintiff must demonstrate that a defendant "expressly aimed its tortious conduct at the forum." *IMO Industries, Inc.*, 155 F.3d at 265.

### 2. Analysis

On this record, this Court does not have either general or specific jurisdiction over Kumar or Rekha. Kumar and Rekha are residents of Virginia that do not conduct any business or own any property in New Jersey. Moreover, the Third-Party Plaintiffs have not provided such evidence. Thus, Kumar and Rekha do not have the necessary continuous and systematic contacts to establish general jurisdiction. *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. 408, at 415 n.9.

Similarly, Kumar and Rekha have not purposefully directed any activities to the state of New Jersey. All of the allegations in the Third-Party Complaint refer to activities and events that occurred in the state of Virginia and were directed at a Virginia resident. A primary requirement of specific jurisdiction is that the "defendant purposefully availed itself of the privilege of conducting activities with the forum state, thus invoking the benefits and protection of its laws." *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987). Aside from the alleged participation in a conspiracy with a resident of New Jersey, the Defendants utterly fail to provide any proof of contact between the state of New Jersey and Kumar and Rekha sufficient to establish purposeful availment. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n. 9 (3d Cir. 1984). Accordingly, the Court finds that specific jurisdiction is wanting over Kumar and Rekha.

Because the Third-Party Plaintiffs also allege intentional torts against Kumar and Rekha, the Court must also analyze these claims under *Calder's* effects test. The fulcrum of the effects

test is that the defendant expressly aimed his tortious conduct at the forum. *Marten*, 499 F.3d at 297-98. Only if this element is satisfied, does the court proceed to the next element. *Id*. at 297.

Applying these principles to the Defendants fraud and conversion claims, the Court concludes that the Defendants have not met their burden. Third-Party Plaintiffs have pointed to two acts that the "conspiracy" or Roy committed or directed to New Jersey, but nothing in the record suggests that Kumar or Rekha demonstrates that they themselves directed any tortious activity at New Jersey. All the allegations in the Third-Party Complaint allege acts directed at Virginia residents in Virginia. As the Third-Party Defendants are residents of Virginia, any alleged fraud would have been directed to them there. Thus, there is no basis under the effects test to confer personal jurisdiction over Kumar and Rekha.

The Court will next turn to the Third-Party Plaintiffs' argument that personal jurisdiction exists over Kumar and Rekha due to their alleged participation in a conspiracy with Roy.

### B. *The Conspiracy Theory of Personal Jurisdiction*

The conspiracy theory of personal jurisdiction rests on the idea that "'the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy.'" *Textor v. Bd. of Regents*, 711 F.2d 1387, 1392-93 (7th Cir. 1983) (quoting *Gemini Enterprises Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 564 (M.D.N.C. 1979)). This basis for personal jurisdiction has not been addressed by the U.S. Supreme and is not met with universal approval in the lower courts.

Neither the Third Circuit nor the New Jersey Supreme Court have addressed whether the conspiracy theory of personal jurisdiction comports with due process. Some courts in this circuit have sanctioned the theory; Delaware and Pennsylvania have explicitly allowed it. Under

Delaware law, to obtain personal jurisdiction by imputing the contacts of a co-conspirator to a non-resident defendant, the following five factors must established:

> (1) a conspiracy to defraud existed;
> (2) the Defendants were a member of that conspiracy;
> (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in Delaware;
> (4) the Defendants knew or had reason to know of the act in Delaware or that acts outside Delaware would have an effect in Delaware; and
> (5) the act in, or effect on, Delaware was a direct and foreseeable result of the conduct in furtherance of the conspiracy.

*Resource Ventures, Inc. v. Resources Management Intern., Inc.*, 42 F. Supp. 2d 423, 434 (D. Del.1999) (citing *Italiano v. Hunter Engineering Co.*, 449 A.2d 210, 225 (Del. 1982). In Pennsylvania, a non-Pennsylvania defendant may be subject to personal jurisdiction if "'substantial acts in furtherance of the conspiracy occurred in Pennsylvania and [] the non-forum co-conspirator was aware of or should have been aware of those acts.'" *CDI Intern., Inc. v. Marck*, No. 04-4837, 2005 WL 146890, at *3 (E.D.Pa., Jan. 21, 2005) (quoting *Santana Prods., Inc. v. Bobrick Washroom Equip.*, 14 F. Supp. 2d 710, 718 (M.D. Pa.1998)).

Only one court in New Jersey has countenanced the conspiracy theory. In *Blystra et al. v. Fiber Tech Group, Inc.*, the plaintiffs alleged that the defendants engaged in a conspiracy to fraudulently deprive the plaintiffs of assets. Nos. 00-4593 and 01-2271, 2005 WL 2807361, at * 2-3 (D.N.J. Oct. 25, 2005). Several of the defendants moved to dismiss the complaint for a lack of personal jurisdiction. *Id.* at *1. The court found that two of the co-conspirator defendants deliberately traveled to New Jersey and engaged in actions that led to the harm which was sufficient to confer personal jurisdiction over the defendants. *Id.* at *6. Additionally, the court found that even though one of the defendants was never physically present in New Jersey, because he was engaged

in the conspiracy and should have known that the actions taken by his co-conspirators in furtherance of the conspiracy were committed in New Jersey, it was permissible to attribute the jurisdictional contacts of the co-conspirators defendants to that defendant. *Id.* The court only cited two Eastern District of Pennsylvania cases for support. [1]

As Chief Judge Scirica has persuasively noted, however, New Jersey law is entirely unclear as to whether the conspiracy theory is cognizable. *Miller Yacht Sales, Inc. v. Smith et al.*, 384 F.3d 93, 102 n.8 (3d Cir. 2004) (Scirica, C.J., concurring in part and dissenting in part).[2] In fact, as will be set forth below, courts are split on whether or not the conspiracy theory is consistent with due process. Because of this lack of clarity, both in New Jersey and beyond, this Court is bound by the Supreme Court's traditional due process doctrine.

Various courts have identified the conflict. *Mackey v. Compass Marketing Inc.*, 391 Md. 117 (2006) (identifying the conflict). State courts in Texas, Washington and California have rejected the conspiracy theory of personal jurisdiction as inconsistent with due process. *See National Sand Association v. Gibson*, 897 S.W.2d 769 (Tex. 1995); *Hewitt v. Hewitt*, 896 P.2d 1312 (Wash. Ct. App 1995); *Mansour v. Super Ct. of Orange County*, 38 Cal. App. 4th 1750 (Cal. Ct. App. 1995). In contrast, state courts in Delaware, Florida, Minnesota, Maryland, Tennessee, South Carolina, Illinois, New Mexico, Georgia and New York have endorsed the theory as constitutionally permissible. *See Chenault v. Walker*, 36 S.W.3d 45 (Tenn. 2001); *Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co. Ltd.*, 752 So.2d 582 (Fla. 2000); *Hammond v. Butler, Means, Evins & Brown*, 388

---

[1] *Koresko v. Bleiweis, Co.*, No. 04-769, 2005 WL 2436693 (E.D.Pa. Sept. 27, 2005); *CDI Int'l, Inc. v. Marck*, No. 04-4837, 2005 WL 146890 (E.D.Pa. Jan. 21, 2005).

[2] In *State of New Jersey, Department of Treasury v. Qwest Communications International, Inc.*, 387 N.J. Super. 487, 503-504 (App. Div. 2006), *cert. denied.*, 127 S. Ct. 2262 and 127 S. Ct. 2263 (2007), the Appellate Division acknowledged that other courts have applied the conspiracy theory of personal jurisdiction. However, the court did not *explicitly* adopt the theory as constitutionally permissible (what it actually did was discuss the theory to buttress its conclusion, grounded in *Calder's* effects test, that jurisdiction lied) and its discussion of it, in any event, is dicta.

S.E.2d 796 (S.C. 1990); *Istituto Bancario Italiano Spa v. Hunter Eng'g Co.*, 449 A.2d 210 (Del. 1982); *Hunt v. Nevada State Bank*, 172 N.W.2d 292 (Minn. 1969), *Santa Fe Technologies, Inc. v. Argus Networks, Inc.*, 42 P.3d 1221 (N.M. Ct. App. 2002); *Cameron v. Owens-Corning Fiberglass Corp.*, 695 N.E.2d 572, 577-78 (Ill. App. 1998); *Rudo v. Stubbs*, 472 S.E.2d 515, 517 (Ga. Ct. App. 1996); *Reeves v. Phillips*, 54 A.D.2d 854, 85, 388 N.Y.S.2d 294 (1976).

Federal courts as well are split on the issue. Many district courts have rejected the conspiracy theory of personal jurisdiction as violative of due process. *See e.g., In Re New Motor Vehicles Canadian Export*, 307 F. Supp. 2d 145, 158 (D. Me. 2004); *Hollar v. Philip Morris Inc.*, 43 F. Supp. 2d 794, 802 n. 7 (N.D. Ohio 1998); *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 672 (W.D. Wis. 1998); *Gutierrez v. Givens*, 1 F. Supp. 2d 1077, 1083 n.1 (S.D. Cal. 1998); *Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608-09 (E.D. Tex. 1994); *Karsten Mfg. Corp. v. United States Golf Ass'n*, 728 F. Supp. 1429, 1434 (D. Ariz. 1990); *Kipperman v. McCone*, 422 F. Supp. 860, 873 n.14 (N.D. Cal. 1976).

Other federal courts have found the test to be constitutionally sound. *Textor v. Board of Regents*, 711 F.2d 1387, 1392-93 (7th Cir. 1983); *Remmes v. Int'l Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1093-96 (N.D. Iowa 2005); *In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15, 27-29 (D.D.C. 2003); *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F. Supp. 656, 665 (E.D. Mich. 1996); *Vermont Castings, Inc. v. Evans Products Co.*, 510 F. Supp. 940, 944 (D. Vt. 1981); *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F. Supp. 559, 564-65 (M.D.N.C. 1979).

Without affirmative guidance from the New Jersey Supreme Court or the Third Circuit[3], or any consensus among the jurisdictions, this Court declines to recognize the conspiracy theory of personal jurisdiction. The Court finds that the central tenets of the theory, at bottom, do not comport with *Int'l Shoe* and its admonition that the assertion of jurisdiction over a non-resident defendant should not "offend traditional notions of fair play and substantial justice." 326 U.S. at 316. Moreover, the Supreme Court has been clear that the requirements of *Int'l Shoe*, "must be met as to *each* defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added). Imputation of the acts of others in a forum state is not consonant with this general principle. "The legal principle that co-conspirators act as each other's agents when they act in furtherance of a conspiracy should not, by automatic operation of law, permit the attribution of one party's forum contacts to another." Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 Fordham L. Rev. 234, 252 (1983). [4]

Moreover, as the *Insolia* court properly held, the conspiracy theory is wholly inconsistent with the Supreme Court's decision in *Asahi*. *Insolia*, 31 F. Supp. 2d at 672. There, the court found jurisdiction wanting in California where a Japanese manufacturer knew that some of its products were being used in the state. *Asahi*, 480 U.S. at 112-13. The Court held that the manufacturer could not be haled into a California court because "the Japanese manufacturer did not advertise or solicit

---

[3] While Third Circuit authority would no doubt be helpful, "[w]hether personal jurisdiction can be obtained under a state long-arm statute on a conspiracy rationale at all is a question of state law." *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992) (Posner, J.) *superseded on other grounds by* Fed. R. Civ. P. 4(f) (as amended in 1993).

[4] Judge Posner disagrees. *See Stauffacher*, 969 F.2d at 459. Looking at the issue in a vacuum, he may well be right that if imputing acts to other members of a conspiracy in other contexts does not offend due process, then it should not so offend in the personal jurisdiction context. Were this Court writing on a clean slate, it might well agree. *Cf. U.S. v. Beltran-Munguia*, 489 F.3d 1042, 1053 (9th Cir. 2007) (Rymer, J., concurring) (stating that if she were writing on a clean slate, she would reach a different result than the court reached, in another context); *U.S. v. Matthews*, 431 F.3d 1296, 1313-14 (11th Cir. 2005) (Tjoflat, J., specially concurring) (same). However, until the Third Circuit or Supreme Court rule otherwise, this court is still bound by the black letter pronouncements in *Intl'l Shoe*, *Rush*, *Burger King*, and *Asahi*.

business in California and did not create, control or employ the distribution system that brought its valves to California." *Insolia*, 31 F. Supp. 2d at 672 (quoting *Asahi*, 408 U.S. at 112) (internal quotation marks omitted). *Asahi* is a useful analog and instructive. The Third-Party Defendants' connection with New Jersey, here, is even more tenuous than the relationship between the manufacturer and California in *Asahi*. The only contention is that they conspired with Mr. Roy and that he had a relationship with New Jersey. If the voluntary placement of a product in the stream of commerce by a company, as in *Asahi*, was not enough to confer jurisdiction over it, then surely the notion of a tie to a person who happens to be linked to a particular forum, and nothing more (such as any indicia of volition on the Third-Party Plaintiffs' parts), cannot confer jurisdiction. "The 'substantial connection,' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112 (citations omitted). Where there is no substantial connection to the forum and no purposeful availment, jurisdiction does not lie.

\* \* \*

There is, indeed, "a great deal of doubt surrounding the legitimacy of th[e] conspiracy theory of personal jurisdiction." *Chirila v. Conforte*, 47 Fed. App'x 838, 842 (9th Cir. 2002). It is not clear whether New Jersey state courts would apply the conspiracy theory of personal jurisdiction as no court in New Jersey has explicitly adopted (or for that matter, rejected) the theory. Under principles of comity, this is a matter best left for the New Jersey Supreme Court or the legislature.[5] In the instant matter, however, this Court is bound by the Supreme Court's due

---

[5] This Court notes again, as it did in the foregoing, that deciding whether or not the conspiracy theory may confer personal jurisdiction over non-resident defendants is a matter of state law. *Stauffacher*, 969 F.2d 455 at 460. The Court recognizes that under settled principles, "[i]n adjudicating a case under state law, ... [courts] are to apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues before us. In the absence of guidance from the state's highest court, [courts] are to consider decisions of the state's intermediate appellate courts for assistance in predicting how the state's highest court would rule." *Downs v.*

process analyses in *Int'l Shoe* and its progeny. This Court recommends dismissal because the attribution of a particular forum to non-resident defendants – where said defendants have *no ties* to the forum, but instead merely ties to an *individual in the forum* – is violative of due process.

### III.   CONCLUSION

For the foregoing reasons, this Court recommends that the motion to dismiss under Fed. R. Civ. P. 12(b)(2) be **GRANTED**.  Pursuant to Local Civil Rule 72.1, the parties have ten days from receipt of this Report and Recommendation to file and serve any objections.

s/ Esther Salas<br>
**ESTHER SALAS**<br>
**UNITED STATES MAGISTRATE JUDGE**

---

*U.S. Pipe & Foundry, Co.*, 441 F. Supp. 661, 663 (D.N.J. 2006) (quoting *Gares v. Willingbro Twp.*, 90 F.3d 720, 725 (3d Cir. 1996)).  To this Court's knowledge, there is nothing in the New Jersey caselaw that directly addresses (indeed the *Qwest* case acknowledges the theory but again, did not directly confront it) this question, and so this Court declines to read the tea leaves.  Instead, this Court has chosen to ground its holding in traditional due process principles and the settled doctrinal framework governing personal jurisdiction.